**FILED**
**CLERK**

8/12/2020 11:26 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JENNIFER MUSANTE, on behalf of herself and all
others similarly situated,

                        Plaintiff,

           -against-

FORSTER & GARBUS, L.L.P., MARK GARBUS,
and RONALD FORSTER,

                       Defendants.
----------------------------------------------------------------X
ROBYN G. DORMAN, on behalf of herself and all
others similarly situated,

                        Plaintiff,

           -against-

FORSTER & GARBUS, L.L.P., MARK GARBUS,
and RONALD FORSTER,

                       Defendants.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

**MEMORANDUM & ORDER**
19-cv-440 (SJF) (ARL)

19-cv-1314 (SJF) (SIL)

      Plaintiffs Jennifer Musante ("Musante") and Robyn G. Dorman ("Dorman") (collectively "Plaintiffs") each commenced a putative class action against Forster & Garbus, L.L.P.("F&G"), Mark Garbus, and Ronald Forster (collectively, "Defendants") alleging that Defendants have used unlawful collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* The amended complaints are essentially identical and present identical claims.

      Currently before the Court are Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Musante*, 19-cv-440, Docket Entry ("DE")

[22]; *Dorman*, 19-cv-1314, DE [20].[1]  Plaintiffs have opposed the motions.  For the reasons set forth herein, the motions are granted.

## I. BACKGROUND

### A. Factual History[2]

Defendant F&G was retained by TD Bank USA, N.A. ("TDB") to collect consumer debts based upon account balances accrued in connection with Target Credit Cards.  Each Plaintiff is indebted to TDB.   In an attempt to collect the debts owed to TDB, F&G sent each Plaintiff a collection letter.  Musante was sent a letter dated January 22, 2018 indicating a total amount owed of $2,466.79 (the "Musante Letter"), and Dorman's letter dated March 9, 2018 showed a total amount due of $3,866.88 (the "Dorman Letter") (collectively, the "Letters").

To the right of the addressee, each of the Letters includes a heading with specific information regarding the debt.  In addition to the total amount owed or "Full Balance," the Letters display a "Minimum Amount due."  As to Musante, this section contains the following information:

> MINIMUM AMOUNT due by February 17, 2018  ▶ $488.00
>  FULL BALANCE  ▶ $2,466.79
> Reference Number  ▶  TGT[redacted]
> Re  ▶ TD BANK USA, N.A. – CREDITOR/TARGET CREDIT CARD

---

[1] The amended complaints and the papers submitted by the parties in support of, and in opposition to, the motions are virtually identical, save for the Plaintiff's name, the amounts owed, and the dates of the collection letters at issue.  References to paragraph or page numbers apply to the submissions in both cases unless the citation indicates to the contrary.  Any references specific to Musante's submissions in 19-cv-0440 will be cited as "*Musante,* DE [x]" and specific references to Dorman's filings in 19-cv-1314 will be cited as "*Dorman,* DE [x]."

[2] The facts are undisputed unless otherwise noted, and are drawn from Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a), *Musante,* DE [22-1]; *Dorman,* DE [20-1]; Affidavit of Ryan Flynn, *Musante,* DE [22-5]; *Dorman,* DE [20-5] (collectively "Flynn Aff."); Affidavit of Joel D. Leiderman, *Musante,* DE [22-3]; *Dorman,* DE [20-3] (collectively "Leiderman Aff."); and Plaintiffs' Response to Defendants' Rule 56.1 Statement, *Musante,* DE [22-7]; *Dorman,* DE [20-7].

Musante Letter (emphasis in original). The body of the Letters includes the following two

sentences:

> The Minimum Amount Due shown above is an amount that if paid by the due date above will bring your account to a current status and stop collections (unless your account goes past due in the future). The account will then be returned to our client.

> Depending upon your account agreement with the creditor, interest, late charges and other charges may continue to accrue on your account.

Letters at 1.[3]

Defendants have submitted the "controlling TDB contract" relevant to Plaintiffs' TDB

debts and notification of changes made to the account terms in 2016. *See* Leiderman Aff., ¶ 7,

Ex. 1 (the "Account Agreement"). Paragraph 7 sets forth the terms regarding accrual of interest.

Paragraph 8 of the Account Agreement, entitled "FEES," lists fees that may be assessed. Several

account terms in the Account Agreement were changed in 2016, becoming effective for

Musante's account on November 21, 2016 and for Dorman's on December 9, 2016. The updated

terms provide for the imposition of:

- LATE PAYMENT FEE – You will pay a Late Payment Fee of $27.00 when any amount due remains unpaid after your Payment Due Date. Any subsequent Late Payment Fees will be $38.00 until you make your required Minimum Payment Due by the Payment Due Date for six consecutive billing periods. In any event, the Late Payment Fee will not be greater than your Minimum Payment Due for the billing period for which your payment was late.

- RETURNED PAYMENT FEE – You will pay $27.00 each time any check or other payment order (including an electronic payment) is not honored by a depositor institution. In any event, the Returned Payment Fee will not be greater than the Minimum Payment Due

---

[3] The body of the Letters is identical except that the Dorman Letter includes an additional sentence stating that "[y]our right to dispute the validity of this debt or any portion thereof, or to seek verification of the debt as stated in the above paragraph, is not affected by the minimum payment due date. If you make the minimum payment due by the due date, you may still exercise your right to dispute or request verification of indebtedness." Dorman Letter at 1. This language is not at issue in this case.

> that was due immediately prior to the date on which the payment
> was returned to us.

Leiderman Aff., Ex. 1, Changes to Account Terms. The Account Agreement provides for the imposition of additional fees for expediting additional or replacement cards and for document reproduction. *See* Account Agreement, ¶8. Defendants have submitted an affidavit from Ryan Flynn, Senior Agency Relations Business Partner for TDB. Flynn stated the account balances set forth in the Letters were "increasing on a daily basis due to accruing interest" and were "also subject to additional late charges and other charges such as bounced check fees." Flynn Aff. at ¶¶5-6.

## B. Procedural History

Musante and Dorman filed their complaints on January 22, 2019 and March 6, 2019, respectively, and amended complaints were filed in both cases on April 7, 2019. While the original complaints differed from one another in some aspects including the order in which the claims were presented, the amended complaints are identical.

The amended complaints assert five causes of action against Defendants arising under sections 1962g(a)(1), 1692e, 1692e(2)(A), 1692e(10).[4] Plaintiffs claim that the advisement that interest, late charges and other charges may continue to accrue was false, deceptive, or

---

[4] The Fourth and Fifth Causes of Action each consist of two paragraphs. First, each Plaintiff "repeats and re-alleges the allegations contained in paragraphs 1-20 of this [Amended] Complaint." Amended Complaint ¶¶ 40, 42. In the remaining paragraphs, Plaintiff alleges that the Letter "amounted to a false, deceptive or misleading means in connection with the collection of debt" in violation of §1692e and various subsections therein, *id.* ¶41, and that Defendants violated §1692g "[a]s a result of sending [the Letter] to Plaintiff." *Id.* ¶43. The first twenty paragraphs used to support the Fourth and Fifth claims do not contain a single allegation suggesting precisely how the Letter was false, deceptive, misleading or otherwise in violation of the FDCPA's strictures. Those allegations concern jurisdiction, venue, and jury demand, *id.* ¶¶1-4, and the identity of the parties, *id.* ¶¶5, 10, and merely tick the statutory boxes for a claim under the FDCPA, alleging that within the meaning of the statute: Plaintiff is a consumer, *id.* ¶6; Plaintiff owed a "debt," *id.* ¶9; Defendants constituted "debt collectors," *id.* ¶¶11-20; the Letter was sent in an attempt to collect the debt, *id.* ¶8; and the receipt and reading of the Letter deprived Plaintiff "or her rights to not be subject to abusive, deceptive, or misleading debt collection practices." *Id.* ¶7. These claims are merely duplicative as they do not state any independent basis for relief.

misleading because (1) TDB had no right under the Account Agreement to impose "other charges," and; (2) late charges were actually accruing. They further claim that the least sophisticated consumer could believe that timely payment of the minimum amount due would prevent the accrual of interest, late charges or other charges. Defendants move for summary judgment on the first three claims, contending, *inter alia,* that : (1) utilization of "safe harbor" language insulates them from liability; (2) the fact that late charges were accruing on Plaintiffs' accounts renders the statement true; and (3) Plaintiffs'' argument that the least sophisticated consumer could believe that payment of the minimum amount due would prevent the accrual of interest, late charges and other charges is frivolous.

## II. LEGAL STANDARDS

### A. Summary Judgment

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting FED. R. CIV. P. 56(a)). In deciding a motion for summary judgment, "the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (the court must not "weigh the evidence, but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.").

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies its initial burden, "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). All facts under consideration must be directly supported by admissible evidence. *See* FED. R. CIV. P. 56(c).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts" but rather "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original)).

## B.  FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).  Since "the

FDCPA is primarily a consumer protection statute, . . . [courts] must construe its terms in liberal

fashion to achieve the underlying Congressional purpose."  *Avila v. Riexinger & Assocs. ("Avila

I"),* 817 F.3d 72, 75 (2d Cir. 2016) (internal quotation marks, alterations, and citations omitted).

A collection notice is viewed from the perspective of the least sophisticated consumer.

*See Kolbasyuk v. Capital Mgmt. Servs., LP,* 918 F.3d 236, 239 (2d Cir. 2018).  The standard is

"an objective analysis that seeks to protect the naive from abusive practices, while

simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations

of debt collection letters."  *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d

Cir. 2005) (internal quotation marks and citation omitted).  Although the least sophisticated

consumer may lack "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the

average, everyday common consumer," *Kolbasyuk,* 918 F.3d at 239 (internal quotation marks

and citation omitted), courts presume that she nonetheless possesses "a rudimentary amount of

information about the world and a willingness to read a collection notice with some care."  *Id.*

(internal quotation marks and citation omitted); *see also Dewees v. Legal Serv'g, LLC,* 506 F.

Supp. 2d 128, 132 (E.D.N.Y. 2007) (applying the least sophisticated consumer standard, courts

analyze collection letters "from the perspective of a debtor who is uninformed, naïve, or trusting,

but is making basic, reasonable and logical deductions and inferences" (internal quotation marks

and citation omitted)).  Ultimately, whether a communication violates the FDCPA depends upon

"whether the notice fails to convey the required information clearly and effectively and thereby

makes the least sophisticated consumer uncertain as to the meaning of the message."  *Weiss v.

Zwicker & Assocs., P.C.,* 664 F. Supp. 2d 214, 216 (E.D.N.Y. 2009) (internal quotation marks

and citation omitted).   Further, a statement "must be materially false or misleading to be

actionable under the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.,* 897 F.3d 75, 85 (2d Cir. 2018). The materiality requirement is a "corollary to the well-established proposition that if a statement would not mislead the unsophisticated consumer, it does not violate the [FDCPA]— even if it is false in some technical sense." *Id.* (alteration in original).

Plaintiffs summarily allege that the Letters violated sections 1692e, 1692e(2)(A), 1692e(10) and 1692g(a)(1). Section 1692g(a)(1) requires notice of "the amount of the debt." A letter that "informs the consumer of the total, present quantity of his or her debt satisfies section 1692g, notwithstanding its failure to inform the consumer of the debt's constituent components or the precise rates by which it may later increase." *Kolbasyuk,* 918 F.3d at 241. Section 1692e broadly bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. Plaintiffs cite to specific subsections prohibiting "[t]he false representation of . . . the character, amount, or legal status of any debt," *id.* §1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt. *Id.* §1692e(10). A communication is deceptive "within the meaning of section 1692e(10) if: (1) the terminology used is vague or uncertain. . . or (2) it can reasonably be read to have at least two different meanings, one of which is inaccurate." *Pifko v. CCB Credit Servs., Inc.,* No. 09-CV-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010) (citation omitted).

## III.  DISCUSSION

### A.  Claims against Individual Defendants

In their opposition papers, Plaintiffs withdraw their claims against defendants Mark Garbus and Ronald Forster. All claims against these individuals defendants are dismissed.

## B. First and Second Causes of Action

Plaintiffs' first two claims arise from the Letters' use of safe harbor language stating that that "[d]epending upon your account agreement with the creditor, interest, late charges and other charges may continue to accrue on your account." They argue that the language is false, deceptive, or misleading because (1) the Account Agreement allowed TDB to assess interest and late charges, but not "other charges," and (2) late charges were, in fact, accruing.

The Second Circuit has approved the use of safe harbor language that "immunizes a debt collector from a Section 1692e claim predicated upon an alleged 'fail[ure] to disclose that the consumer's balance may increase due to interest and fees.'" *Kolbasyuk,* 918 F.3d at 242 (quoting *Avila 1,* 817 F.3d at 77 (alteration in original)). Plaintiffs' first argument attacks the safe harbor language used, construing it as "an unconditional statement that <u>all three items</u>, interest and late charges and other charges, are being accrued by the creditor." Plaintiffs' Memorandum of Law in Opposition ("Pls. Opp.") at 11 (emphasis added). That interpretation has been rejected in this District, including by this Court in addressing the exact same language used by F&G. *See Buccilli v. Foster & Garbus, LLP,* No. 17-cv-7498, 2019 WL 1208792, at * (E.D.N.Y. Mar. 12, 2019).[5] Plaintiffs' challenge to the safe harbor language fails for the same reasons this Court previously set forth in *Buccilli.* In particular, it is again noted that where the safe harbor language references possible increases in interest, late charges, and other charges, "it is only necessary for one of the three components to change. As interest was accumulating on [plaintiff's] debt, the Letter's accuracy does not need to specify which of those components fluctuate nor does it require all three to do so." *Avila v. Reliant Capital Solutions ("Avila II"),* No. 18-cv-2718, 2018 WL 5982488, at *4 (E.D.N.Y. Nov. 14, 2018), *aff'd on other grounds,*

---

[5] Examination of the letter at issue in *Buccilli* reveals it to be identical in all material respects to the Letters forming the basis of the instant complaints. *See Buccilli,* 17-cv-7498, DE [1-1].

771 F. App'x 46 (2d Cir. 2019) (summary order); *see also Pettaway v. Nat'l Recovery Solutions, LLC,* 955 F.3d 299, 305 (2d Cir. 2020) ("Even if there is no current intention to charge interest, the mere existence of that future possibility is completely consistent with the word 'may' in the Letter's language").

Plaintiffs urge this Court to adopt a ruling from the Seventh Circuit for use in this Circuit. *See* Pls. Opp. at 4-5 (quoting *Boucher v. Fin. Sys. of Green Bay, Inc.,* 880 F.3d 362, 370-71 (7th Cir. 2018). The *Boucher* case stressed that the safe harbor language must itself be accurate, and found that defendant's "use of the safe harbor language was inaccurate because [defendant] could not lawfully impose 'late charges and other charges.' Therefore [defendant] is not entitled to safe harbor protection." *Id.* at 370. The Second Circuit has not ruled on whether the *Boucher* approach should be adopted in this Circuit. It distinguished *Boucher* in its summary order in *Avila II,* 771 F. App'x at 47, and most recently, it declined to address plaintiff's argument that the impossibility of late charges and other charges being imposed raised a plausible claim because that argument was raised on appeal for the first time in the reply papers. *See Pettaway,* 955 F.3d at 305 n.2.

In any event, the merits of adopting *Boucher* need not be addressed as it would not apply in the current case as the Plaintiffs' debts were potentially subject to increase for all three types of charges identified in the safe harbor provision. The affidavit from TDB clearly states that the account was "increasing on a daily basis due to accruing interest," Flynn Aff. at ¶5, and "was also subject to additional late charges and other charges such as bounced check fees." *Id.* ¶6. This representation is confirmed by the express terms of the Account Agreement providing for the imposition of interest, late payment fees, and other charges including a "returned payment fee." *See Coleman v. Alltran Ed. Inc.,* No. 18-CV-6564, 2019 WL 2570248, at *3 (E.D.N.Y.

June 20, 2019) (declining to reach the issue raised by *Boucher* "because plaintiff has conceded that late charges *could* be assessed on his debt if his debt were rehabilitated and he failed to make timely payments on it thereafter" and thus the letter was not inaccurate); *see also Morgan v. Northstar Location Servs., LLC,* No. 18-cv-2485, 2019 WL 3531461, at * 6 (E.D.N.Y. Aug. 1, 2019) ("debt collectors may include the safe harbor language, even when they do not intend to collect interest, late fees, and/or other charges, as long as they possess the contractual right to collect those charges"). As the debts were subject to possible increase under not just one, but all three identified categories, inclusion of those categories in the safe harbor was accurate.

Plaintiffs' second claim is that the conceded fact that late charges were, in fact, accruing leads to the conclusion that the safe harbor's advisement that such charges "may" be imposed was false, deceptive, and misleading under the FDCPA. This argument has been raised previously, and consistently rejected, in this District, and is similarly rejected here. *See, e.g., Paracha v. MRS BPO, L.L.C.,* No., 2019 WL 4736939, at * 4 (E.D.N.Y. Sept. 27, 2019) (rejecting argument that use of "may" in safe harbor language when interest was, in fact, accruing rendered the letter false, deceptive, or misleading); *Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP,* No. 17-CV-4472, 2018 WL 1582220, at *3 (E.D.N.Y. Mar. 30, 2018) (same).

Plaintiffs suggest that even if the safe harbor language forecloses a claim under §1692e(10), they still have a claim since "the Second Circuit's decision in *Avila I* did not eliminate the express prohibition in 15 USC § 1692e(2)(A)" against false representations of the amount of any debt. Pls. Opp. at 6. This argument is refuted by a plain reading of *Avila I* itself. The Second Circuit, prior to its analysis, noted that §1692e contains a non-exhaustive list of violative practices and expressly mentioned one subsection, §1692e(2)(A). *Avila I,* 817 F.3d at

75. The Court's holding provided that accurate use of the safe harbor language would immunize the debt collector "to liability under Section 1692e" without limitation to a particular subsection. *Id.* at 77.

F&G is protected by the safe harbor language and thus there is no violation of either §1692e or §1692g. Each of the Letters complies with these sections as it "lists the actual amount due (rather than an estimated amount), states that that amount may increase due to interest or other charges, and provides a way for the debtor to contact the debt collector. . . This is all the FDCPA requires." *Taubenfliegel v. EGS Fin. Care, Inc.,* No.18-cv-1962, 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018) (internal citations omitted), *aff'd* 764 F. App'x 76 (2d Cir. 2019) (summary order).

## C.  Third Cause of Action

In their third claim, Plaintiffs claim that the least sophisticated consumer could believe that payment of the Minimum Amount due by the specified date would prevent the accrual of interest, late charges and other charges. Characterizing this belief as a "reasonable interpretation," Plaintiffs argue that that if interest, late charges, or other charges were actually accruing at the time the Letters were sent, then that "reasonable interpretation" would be inaccurate, resulting in violations of §§1692e, 1692e(2)(A), and 1692e(10). Pls. Opp. at 2. The Court disagrees.

"It is assumed that even the least sophisticated consumer will read a debt collection letter in its entirety." *Weber v. Computer Credit, Inc.,* 259 F.R.D. 33, 38 (E.D.N.Y. 2009). Viewed in their entirety, the Letters clearly seek payment of the Minimum Amount only. Although the Full Balance is set forth, as required by statute, the only payment due date pertains to the Minimum Amount alone. The body of the Letters addresses only payment of the Minimum Amount due.

The very next paragraph contains the express notification that interest, late charges and other charges may continue depending on the Account Agreement. For Plaintiffs' argument to have merit, the least sophisticated consumer must consider this warning as completely divorced from the rest of the Letter. She must reasonably believe that this express warning simply does not apply between the date of issuance of the Letter and the payment due date, with the result that the accrual of interest, late charges, and other charges would stop entirely, or would somehow be suspended until the expiration of the payment due date. The safe harbor language, read in conjunction with the rest of the Letter, pertains to the present possibility of accrual of interest, late charges, and other charges. The interpretation suggest by Plaintiffs is far from reasonable, but rather is illogical, at best, or idiosyncratic and fanciful, at worst.[6]

The Court has considered the single case relied upon Plaintiffs in support of their argument, *Ortiz v. Advanced Call Center Techs., LLC,* 388 F. Supp. 3d 236, 241 (E.D.N.Y. 2019). The *Ortiz* court, in deciding a motion to dismiss, found that the letter at issue implied that payment of the amount currently due would prevent accrual of additional interest and fees. *See id*. The reported decision in *Ortiz* does not include the entire letter, and while it seems to have used similar language, it is not identical to the language used in the Letters here. For example, the letter in *Ortiz* does not appear to include a payment due date specific to the amount currently due as opposed to the account balance. *Id.* at 239. In light of the factual disparities, the case is not persuasive. The Court has considered Plaintiffs' remaining arguments and finds them to be without merit.

---

[6]Plaintiffs have focused upon the interplay between the Minimum Amount due language and the safe harbor provision. They have not suggested that the least sophisticated consumer would experience any actionable confusion arising from the statement that timely payment of the minimum amount due will "bring your account to a current status and stop collections," despite the lack of any definition of "current status" or an explanation of "collections," or the meaning of the account being "returned to our client."

### D. Leave to Amend

In the final paragraph of their opposition, Plaintiffs include a pro forma request for an opportunity to further amend the complaints "[t]o the extent that the amended complaints do not conform to the contract which governed Plaintiff's debt." Pls. Opp. at 14. Plaintiffs do not offer any excuse for their failure to request leave to amend earlier. Putting aside any issue regarding the timeliness of the request, Plaintiffs' perfunctory request is deficient in that it fails to provide any proposed theories or additional facts that would raise their claims from implausible to plausible. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 188 (2d Cir. 2014) (denial of leave to amend appropriate where "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend"); *In re Goldman Sachs Mortgage Serv'g S'holder Derivative Litig.,* 42 F. Supp. 3d 473, 487 (S.D.N.Y. 2012) (denying leave to amend where plaintiffs failed to articulate how an amendment would cure pleading defects). Leave to amend is not required where "the problem with [the] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000). Plaintiffs fail to explain how adding references to the Account Agreements would cure any deficiency in the pleadings. As amendment would be futile, leave to amend these claims is denied. *See generally Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend").

### IV. CONCLUSION

For the foregoing reasons, (1) Plaintiffs' claims against the individual defendants, Mark Garbus and Ronald Forster, are deemed withdrawn; (2) Defendant's motions for summary judgment in *Musante,* 19-cv-440, DE [20] and *Dorman,* 19-cv-1314, DE [22], are granted; and

(3) Plaintiffs' request to further amend their complaints is denied.  The Clerk of the Court is directed to enter judgment and close both cases.

**SO ORDERED**.

_/s/ Sandra J. Feuerstein_

Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
          August 12, 2020